UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

TIMOTHY N. FERRARI, d/b/a Sunrise Sunset Landscaping,

                Debtor.

Case No. A05-01947-DMD
Chapter 7

**Filed On
10/25/06**

## MEMORANDUM REGARDING DISPOSITION
## OF SALE PROCEEDS

The debtor filed for chapter 7 relief on October 14, 2005. He owned two separate homes in Anchorage at the time: his family home at 2621 Wesleyan Drive and a rental home at 2513 Porter Place. The family home was scheduled with a value of $262,200.00 and a first mortgage of about $220,409.00 against it. The rental home was recently sold by the chapter 7 trustee for $210,000.00. It was encumbered by a first mortgage of about $110,000.00. Both homes were subject to judgment liens as well as federal tax liens. A federal tax lien recorded September 16, 2002, in the sum of $66,656.43 was first in priority among them. Arctic Builder's Source ("ABS") had a judgment lien for $32,985.77 that was recorded February 25, 2004. Numerous other creditors had subordinate judgment liens and additional federal tax liens of over $218,000.00 were filed after September 24, 2005.

The debtor filed a motion to avoid miscellaneous judgment liens against his homestead on June 2, 2006. In the motion, counsel for the debtor stated:

> Ferrari is a single parent and lives at the Wesleyan property with his two children. Although the Wesleyan property is over-encumbered with liens, Ferrari concedes that the

>property should be sold by the Trustee, provided that the proceeds of sale will go to the IRS and reduce his secured debt to the IRS. Therefore, this motion to avoid liens pursuant to § 522(f) is filed.[1]

ABS didn't object to this motion. An order invalidating the judgment lien of ABS and six other judgment lien creditors was entered August 17, 2006.

Shortly thereafter, the trustee moved for sale of the rental property on Porter Place. Under the motion as filed, the net proceeds from the sale, approximately $63,000.000, were to be paid to the IRS. ABS objected to the sale and the proposed payment to the IRS. It wanted the IRS's prior tax lien to be satisfied first from the proceeds of the family home property on Wesleyan Drive. Ferrari wanted the IRS paid from the rental property. He had changed his mind regarding the sale of his family home, instead seeking an offer in compromise with the IRS in order to keep the family home for himself and his two children. The parties agreed that the rental property could be sold but the trustee was not to distribute the proceeds until a further hearing occurred. The sale has closed and the trustee is now holding over $60,000.00 in net proceeds. ABS has filed an additional pleading entitled "Motion for Distribution of Porter Place Net Sales Proceeds First to Arctic Builder's Source and Motion for Judicial Order That Debtor's Wesleyan Property Be Sold to Satisfy IRS Lien for $66,656.00."[2] Both the debtor and the IRS have objected to ABS's motion. A hearing on distribution of the net sales proceeds was held on October 17, 2006.

---

[1] *See* Debtor's Mot. Pursuant to 11 U.S.C. 522(F) to Avoid Judicial Liens Impairing Exemption on Residence, filed June 2, 2006 (Docket No. 20), at pp. 2-3.

[2] *See* Docket No. 54, filed Oct. 12, 2006.

2

ABS seeks to marshal the debtor's assets to improve its position against the rental property proceeds. The Supreme Court rejected a similar argument in *Meyer v. United States*.[3] The Court stated:

> This Court has said that '(t)he equitable doctrine of marshaling (sic) rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.' . . .
>
> In considering the relevance of the doctrine here it is well to remember that marshaling is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties. Thus, state courts have refused to apply it where state-created homestead exemptions would be destroyed, . . . or where the 'head of household' exemption was involved. Federal courts have likewise accepted this principle of the nonapplicability of the doctrine where, as here, one of the funds is exempt under state law.[4]

*Meyer* was a case involving exempt proceeds from a life insurance policy. Peter Meyer pledged four life insurance policies to a bank as collateral for a loan in 1943. His wife, Ethyl Meyer, was listed as a beneficiary. The face amount of the policies was

---

[3] 375 U.S. 233 (1963). ABS hasn't cited, nor could the court find, any Alaska case authority on marshaling of assets in this context.

[4] *Meyer v. United States*, 375 U.S. at 236-237 (citations omitted).

3

$50,000.00. The case surrender value of the policies at the time of his death, December 28, 1955, was $27,285.87. Meyer owed $6,159.09 to the IRS for tax years 1945 and 1946. The IRS had filed a notice of lien prior to Meyer's death. Life insurance proceeds are exempt under New York law. The IRS sought to marshall the bank's lien such that the IRS would be paid from the cash surrender value of the policy, and the bank from the policy proceeds. The bank had a lien against both the cash surrender value of the policy and the proceeds. The net effect of the proposed marshaling of liens was to diminish the widow's share of life insurance proceeds by $5,717.88. The Supreme Court overturned the trial and appellate court decisions favoring the IRS and ruled in favor of the widow.

Here, the IRS has two possible sources of funds to satisfy its initial $66,656.00 tax lien: proceeds from the sale of the debtor's rental property and future proceeds from the sale of the debtor's residence. ABS seeks to limit the IRS to proceeds from the debtor's family home, thereby freeing the sale proceeds from the rental property for application to its judgment lien. The net result of ABS's proposal is that the IRS's first lien would be paid out of the debtor's homestead rather than the rental property. I view such a result as inequitable and contrary to the Supreme Court's decision in *Meyer*.

ABS argues that the debtor contemplated a sale of the family home in his initial motion to avoid liens and should be forced to sell his home now. This argument is not persuasive. The debtor's motion to avoid liens sought to free his homestead from certain judgment liens that impaired his homestead exemption, as permitted under 11 U.S.C. § 522(f). The debtor was entitled to use § 522(f) regardless of the ultimate disposition of the family home. Nothing in § 522(f) requires him to sell or otherwise dispose of his home. All the debtor had to show was that ABS had a judgment lien that impaired his exemption. He

4

did and the ABS lien was properly invalidated along with other judgment liens. The fact that the debtor is now seeking to compromise his obligations to the IRS and retain his home for the benefit of himself and his children does not constitute grounds for a forced sale of the home property.

The IRS will receive the proceeds of the debtor's rental property for application to its first lien. The ABS motions will be denied. An order will be entered consistent with this memorandum.

DATED: October 24, 2006.

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  M. Boutin, Esq.
S. Baker, Esq.
G. Watts, Esq.
J. Seimers, Esq.
W. Barstow, Trustee
U. S. Trustee

10/25/06